UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CHARLES REEDY,<br><br>       Plaintiff,<br><br>    v.<br><br>NOVAD MANAGEMENT CONSULTING, LLC,<br><br>       Defendant. | Civil Action No.<br>18-10998-FDS |

## MEMORANDUM AND ORDER ON DEFENDANT'S MOTION TO DISMISS

SAYLOR, J.

This is an action arising out of a lapsed insurance policy on plaintiff's home, which was destroyed by fire.

Plaintiff Charles Reedy entered into a reverse mortgage under which he was responsible for maintaining hazard insurance on the property. He failed to pay the premium and the policy lapsed. A few months later, an arsonist burned down his house. The insurance company denied his claim. He now asserts claims for negligence, breach of contract, negligent and reckless infliction of emotional distress, and violation of Mass. Gen. Laws ch. 93A against his current loan servicer, defendant NOVAD Management Consulting, LLC, for allegedly failing to inform him that the premium had not been paid.

NOVAD has filed a motion to dismiss all counts for failure to state a claim upon which relief can be granted. For the following reasons, that motion will be granted.

I.  **Background**

   A.  **Factual Background**

The following facts are set forth as alleged in the complaint.

In 2011, Charles Reedy executed a reverse mortgage on his property at 91-93 Adams Street, New Bedford, Massachusetts. (Compl.¶¶ 3-4). Under the terms of that mortgage, Reedy was required to maintain hazard insurance covering the property. (*Id.* ¶ 8). According to the complaint, he "was informed" at the time he entered into the reverse mortgage that if he failed to pay his insurance premium, the mortgagee would pay the premium and charge his account. (*Id.* ¶ 9).

In 2016, the original mortgagee assigned Reedy's mortgage to the U.S. Department of Housing and Urban Development ("HUD"). (Compl. ¶ 6). NOVAD Management Consulting, LLC became the servicer of the Reedy loan at that time. (*Id.* ¶ 7). The complaint alleges that NOVAD was "authorized to pay the insurance premium on the Plaintiff's behalf and charge the premium to the Plaintiff's account." (*Id.* ¶ 21).

As of the time of the assignment to HUD, the hazard insurance policy on the property was active. (*Id.* ¶ 10). It did not automatically renew and was set to expire on May 3, 2017. (*Id.* ¶¶ 11-12). The complaint alleges that NOVAD sent Reedy a letter on May 3, 2017, to inquire as to the status of the insurance policy, but that Reedy is elderly and forgetful and does not remember receiving the letter. (*Id.* ¶¶ 14, 16, Ex. A). The letter informed him that his policy was set to expire and requested "a copy of the declarations page for [his] new insurance policy." (*Id.* Ex. A). It also explains: "If you prefer us to contact your insurance agent directly for this information, please complete the information below and sign where indicated authorizing release of this information directly to us. A self-addressed envelope has been provided for your convenience." (*Id.*).

2

Neither Reedy nor anyone else paid the premium for the insurance policy, and it lapsed on May 3, 2017. (Compl. ¶¶ 21-22). On July 22, 2017, an arsonist set fire to the house, causing extensive damage and rendering the property unsafe for human habitation. (*Id.* ¶ 23). Reedy alleges that he discovered for the first time that the policy had lapsed when he went to his insurance agent to file a claim. (*Id.* ¶ 25).

Reedy mailed NOVAD a demand letter pursuant to Mass. Gen. Laws ch. 93A, § 9 on November 17, 2017. (Compl. ¶ 79, Ex. B). NOVAD did not respond. (*Id.* ¶ 81). Reedy mailed the letter again on January 24, 2018, and NOVAD again failed to respond. (*Id.* ¶¶ 82-83, Ex. C). On March 12, 2018, Reedy mailed another demand letter, including additional claims and citations. (*Id.* ¶ 84, Ex. D). NOVAD did not respond to that letter either and has not made any offer of settlement. (*Id.* ¶¶ 85-86).

### B. **Procedural Background**

Reedy filed this claim in Bristol Superior Court on April 17, 2018. NOVAD removed this action to federal court pursuant to 28 U.S.C. §§ 1332(a) and 1441(a), on the ground that Reedy is a citizen of Massachusetts, NOVAD is a citizen of Maryland, and the amount in controversy is about $600,000.[1]

The complaint contains 5 counts: (1) negligence; (2) breach of contract; (3) negligent infliction of emotional distress; (4) reckless infliction of emotional distress; and (5) violation of Mass. Gen. Laws ch. 93A.

NOVAD has moved to dismiss the complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

---

[1] As represented in the notice of removal, NOVAD is a Maryland limited liability company with its principal place of business in Maryland. It has one member, E. Davon Kelly, who is a citizen of Maryland. (Notice of Removal ¶ 6).

## II. Standard of Review

On a motion to dismiss, the court "must assume the truth of all well-plead[ed] facts and give . . . plaintiff the benefit of all reasonable inferences therefrom." *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)). To survive a motion to dismiss, the complaint must state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations and footnote omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556). Dismissal is appropriate if the facts as alleged do not "possess enough heft to sho[w] that [plaintiff is] entitled to relief." *Ruiz Rivera v. Pfizer Pharm., LLC*, 521 F.3d 76, 84 (1st Cir.2008) (alterations in original) (quoting *Clark v. Boscher*, 514 F.3d 107, 112 (1st Cir. 2008)) (internal quotation marks omitted).

## III. Analysis

### A. Count 1: Negligence

Count 1 alleges that defendant breached its duty of reasonable care to "service the Plaintiff's reverse mortgage in a way that complied with the FHA Single Family Housing Policy Handbook." (Compl. ¶¶ 28-29, 47). It alleges that plaintiff's loan was in "non-monetary default" 30 days after the insurance policy lapsed, and that the Handbook requires the servicer to make certain efforts to reach the borrower in that event, including telephoning the borrower twice a week, sending the borrower information, performing an occupancy inspection, and conducting a

face-to-face interview with the borrower. (*Id.* ¶¶ 31-38).[2] It alleges that defendant's failure to follow those procedures caused the property to be uninsured. (*Id.* ¶ 48).

To state a claim for negligence, plaintiff must allege that defendant owed plaintiff a duty of reasonable care, that defendant breached that duty, and that the breach caused plaintiff damages. *Speleos v. BAC Home Loans Serv., L.P.*, 755 F. Supp. 2d 304, 310 (D. Mass. 2010).

Defendant argues that the negligence claim must be dismissed because it had no duty to make sure that plaintiff paid his insurance premium. The Handbook sections plaintiff relies on are contained within Section III.A, titled "Servicing and Loss Mitigation": "Title II Insured Housing Programs *Forward* Mortgages." (Handbook § III.A, at 551 (emphasis added); *see* Compl. ¶¶ 34-38 (citing Handbook § III.A.2.h)). That section, however, explicitly does not apply to reverse mortgages. "This section provides the standards and procedures applicable to the servicing of all Single Family (one to four units) Mortgages insured under Title II of the National Housing Act, *except for Home Equity Conversion Mortgages* (HECM)." (Handbook § III.A, at 551 (emphasis added)); *see* 12 U.S.C. § 1715z-20 (providing for home equity conversion mortgages for elderly homeowners within Subchapter II ("Mortgage Insurance") of Chapter 13 ("National Housing"). Therefore, nothing in that section of the Handbook obligates servicers to do anything with respect to reverse mortgages, and the Handbook thus cannot be the source of any duty owed plaintiff by defendant.[3]

---

[2] Because plaintiff refers to, quotes, relies on, and attaches portions of the FHA Handbook in its complaint, the Court may consider it in ruling on the motion to dismiss. *See Giragosian v. Ryan*, 547 F.3d 59, 65 (1st Cir. 2008). The full text of the regulations is available at https://www.hud.gov/sites/documents/40001HSGH.pdf. (Compl. ¶ 29, Ex. D).

[3] The entire text of section III.B, titled "Servicing and Loss Mitigation": "Title II Insured Housing Programs Reverse Mortgages" reads:

> "This section is reserved for future use, and until such time, FHA-approved Mortgagees must continue to comply with all applicable law and existing Handbooks, Mortgagee Letters, Notices and outstanding guidance applicable to a Mortgagee's participation in FHA programs."

5

Plaintiff also argues that defendant owed a common-law duty to him as a servicer of his loan. (Compl. ¶ 27; Pl. Opp. at 3). While a servicer may have various contractual duties, the mere existence of a relationship between a servicer and a borrower does not appear to create any additional obligations. Plaintiff has cited no cases to support such a duty, and the Court can find no evidence of one. *See MacKenzie v. Flagstar Bank, FSB*, 738 F.3d 486, 495 (1st Cir. 2013) ("The relationship between a borrower and lender does not give rise to a duty of care under Massachusetts law.").

Finally, plaintiff argues that defendant had an affirmative duty under 209 C.M.R. § 18.21 not to misrepresent the terms and conditions of NOVAD's servicing responsibilities and Reedy's obligations under the loan. (Pl. Opp. at 3). Whatever the applicability of that regulation, a duty not to make misrepresentations cannot be breached by failing to take particular steps to notify plaintiff that his hazard insurance was expired.

Therefore, Count 1 fails to state a claim for negligence.

### B.     Count 2:  Breach of Contract

Count 2 alleges that defendant breached its contract with HUD by failing to exercise reasonable care and to comply with the requirements of the FHA Handbook, as required by the terms of that contract. (Compl. ¶ 50, 53).

This claim is based entirely on the theory that the FHA Handbook requires defendant to contact plaintiff by telephone, perform an occupancy inspection, and conduct a face-to-face interview within a certain time after the hazard insurance policy on his reverse-mortgaged property expired. Because the Handbook contains no such requirement, the claim must be

---

(Handbook § III.B, at 820).

dismissed for the same reasons as Count 1.[4]

### C. Counts 3: Negligent Infliction of Emotional Distress

Count 3 alleges that defendant "was negligent in servicing the Plaintiff's reverse mortgage" and "[a]s a direct and proximate result of the Defendant's negligence, the Plaintiff suffered severe emotional distress." (Compl. ¶¶ 56-57).

"To prevail on a claim of negligent infliction of emotional distress, a plaintiff must establish: (1) negligence; (2) emotional distress; (3) causation; (4) physical harm; and (5) that a reasonable person would have suffered emotional distress under the circumstances." *Alicea v. Commonwealth*, 466 Mass. 228, 234 n.9 (2013). Because the complaint fails to allege a claim for negligence, Count 3 must be dismissed.

### D. Count 4: Reckless Infliction of Emotional Distress

Count 4 alleges that "Defendant's conduct in servicing the Plaintiff's reverse mortgage"—including its "failure to contact the Plaintiff by telephone even once," "failure to attempt an occupancy inspection," "failure to even attempt a face-to-face interview," and "failure to take any steps whatsoever after May 3, 2017, to ensure that the Subject Property was covered by hazard insurance"—"was extreme and outrageous." (Compl. ¶¶ 64-68). It further alleges that defendant "knew or should have known that its failure to establish contact with the Plaintiff and/or its failure to exercise reasonable care to ensure that hazard insurance remained in effect on the Subject Property would likely result in emotional distress if a fire were to occur at the

---

[4] Defendant also argues that plaintiff cannot assert a breach-of-contract claim against it because he is not a third-party beneficiary of the contract between defendant and HUD. "It is a well-established principle that '[g]overnment contracts often benefit the public, but individual members of the public are treated as incidental beneficiaries [who may not enforce a contract] unless a different intention is manifested.'" *MacKenzie v. Flagstar Bank, FSB*, 738 F.3d 486, 491 (1st Cir. 2013) (alterations in original) (quoting Restatement (Second) of Contracts § 313 cmt. a (1981)). Plaintiff has alleged that he was a third-party beneficiary of the contract. (Compl. ¶ 51). Because neither side has produced the relevant contract, the Court cannot determine whether "a different intention [was] manifested."

Subject Property and no compensation was available to the Plaintiff." (*Id.* ¶ 62).

"The elements of a cause of action for reckless infliction of emotional distress are the same as those for intentional infliction of emotional distress." *Bowman v. Heller*, 420 Mass. 517, 519 n.2 (1995). "To sustain a claim of intentional infliction of emotional distress, a plaintiff must show (1) that the defendant intended to cause, or should have known that his conduct would cause, emotional distress; (2) that the defendant's conduct was extreme and outrageous; (3) that the defendant's conduct caused the plaintiff's distress; and (4) that the plaintiff suffered severe distress." *Roman v. Trs. of Tufts College*, 461 Mass. 707, 717-18 (2012) (quoting *Sena v. Commonwealth*, 417 Mass. 250, 263-64 (1994)). The conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (quoting *Foley v. Polaroid Corp.*, 400 Mass. 82, 99 (1987)) (internal quotation mark omitted).

The conclusory allegations that defendant's conduct was "extreme and outrageous" are plainly insufficient to satisfy this standard. Even if defendant had been obligated to contact plaintiff about the lapse in his hazard insurance—which it was not—its silence can hardly be regarded as "atrocious" and "utterly intolerable in a civilized community." It is simply not plausible that a failure to notify even an elderly homeowner that his insurance had expired is tantamount to "set[ting] [him] up for disaster" if a fire should happen to occur. (*See* Pl. Opp. at 11). Count 4 will therefore be dismissed.

### E. Count 5: Chapter 93A

Finally, Count 5 alleges that defendant's "abject failure to contact the Plaintiff once his account became delinquent was unfair and deceptive" and that it was "unfair and deceptive for the Defendant to take no steps to ensure that the Subject Property was covered by the necessary insurance." (Compl. ¶¶ 72-73). It also alleges that the FHA Handbook was a regulation meant

8

for the public's health, safety, or welfare as contemplated by Mass. Gen. Laws ch. 93A, § 2. (*Id.* ¶¶ 74-76).

An act or practice is unfair or deceptive if it falls "within at least the penumbra of some common-law, statutory, or other established concept of fairness; is immoral, unethical, oppressive, or unscrupulous; and causes substantial injury to consumers." *Young v. Wells Fargo Bank, N.A.*, 828 F.3d 26, 33-34 (1st Cir. 2016) (quoting *Walsh v. TelTech Sys., Inc.*, 821 F.3d 155, 159-60 (1st Cir. 2016)) (internal quotation marks omitted).

Because defendant had no duty to make sure that plaintiff paid his insurance premiums, there is nothing unfair about its failure to take extraordinary steps to contact him. Furthermore, plaintiff acknowledges that defendant did contact him, even attaching the letter to his complaint. (Compl. ¶¶ 14, 16, Ex. A). Defendant was not required to anticipate that plaintiff might be old and forgetful and that an arsonist might shortly set fire to his house. Although the situation is, of course, unfortunate, it is not "unfair" within the meaning of Chapter 93A.

Nor can the Court discern anything "deceptive" about defendant's behavior. Although the complaint does allege that plaintiff was "informed" that the servicer would pay the hazard insurance for him if he failed to do so, it does not allege that such a service was actually part of his reverse-mortgage agreement. (Compl. ¶ 9). And it does not allege that defendant made that representation; rather, it alleges that he was so informed by an unidentified person "[a]t the time he obtained the reverse mortgage," five years before defendant became his servicer. (*Id.*). Count 6 will therefore also be dismissed.

### IV. <u>Conclusion</u>

For the foregoing reasons, the motion of defendant NOVAD Management Consulting, LLC to dismiss for failure to state a claim upon which relief can be granted is GRANTED.

**So Ordered.**

Dated: July 9, 2018

/s/ F. Dennis Saylor
F. Dennis Saylor, IV
United States District Judge